J-S02027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERARD GETHERS | : | |
| | : | |
| Appellant | : | No. 465 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 24, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0007289-2019

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 14, 2024**

Gerard Gethers (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of persons not to possess firearms and firearms not to be carried without a license; and two counts each of possession of a controlled substance and possession of drug paraphernalia.[1]  Appellant challenges the trial court's denial of his pretrial motion to dismiss all charges pursuant to Pa.R.Crim.P. 600.  After careful review, we affirm.

The trial court summarized the relevant factual history:

> On October 17, 2019, Corporal Matthew Stadulis of the Whitemarsh Township Police Department answered a radio

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1); 35 P.S. §§ 780-113(a)(16), (a)(32).

dispatch initiated by a telephone call from a long-time resident in a Lafayette Hill neighborhood reporting a black male and female loitering in the area while using narcotics.

....

Without activating his patrol car's lights or siren, Corporal Stadulis drove from the station onto Crescent Avenue, turning onto Ridge Pike and then again onto Pine Ridge Drive toward Evergreen Lane. The Corporal could see two (2) individuals matching the description provided by the 911 caller walking toward him from Evergreen Lane[. Corporal Stadulis] pulled over to the curbside of the road, stopped his vehicle and exited to have a conversation with the male identified as [Appellant] and a female companion. [Appellant] and the female stopped to speak with the Corporal.

....

Corporal Stadulis opined that his observations of [Appellant] were consistent with an individual who had smoked PCP. Even though Corporal Stadulis had instructed [Appellant] to take his hands out of his pockets on first approach, [Appellant] kept putting his hands in his pockets while the Corporal was attempting to identify both individuals. Corporal Stadulis determined that [Appellant] was in violation of the public intoxication statute and [Corporal Stadulis] wait[ed] for backup to arrive before placing [Appellant] under arrest.

....

Corporal Stadulis placed [Appellant] under arrest for suspected use of PCP and public drunkenness. During the search of [Appellant] incident to arrest, Corporal Stadulis found vials of PCP and a marijuana cigarette laced with PCP in [Appellant]'s pockets and a revolver in his sock.

Trial Court Opinion, 7/12/23, at 2-4 (record citations and some paragraph breaks omitted).

On October 17, 2019, Corporal Stadulis charged Appellant with the above drug and firearm offenses. The Commonwealth indicated it was ready

- 2 -

for trial in February 2020. *Id.* at 5. However, during the pendency of Appellant's case, our Supreme Court declared a statewide judicial emergency in response to the Covid-19 pandemic. The trial court competently outlined the Supreme Court's declarations[2] and Montgomery County's response to the statewide judicial emergency:

> On March 12, 2020[,] and March 16, 2020, the Pennsylvania Supreme Court issued its first orders regarding the Covid-19 global pandemic, declaring a general statewide judicial emergency, and authorizing president judges in the Commonwealth to suspend operation of the courts in their judicial district to consider the appropriate measures to be taken to safeguard the health and safety of court personnel, court users, and members of the public. The Court also specifically authorized the president judges to suspend the operation of Rule of Criminal Procedure 600 within the judicial district. Noting that nothing in the order shall affect a criminal defendant's right to a speedy trial under the United States and Pennsylvania Constitutions, the Court advised that the circumstances giving rise to the order and the suspension may be relevant to the constitutional analysis.
>
> The Honorable Thomas M. DelRicci, P.J.[,] declared a judicial emergency in the 38th Judicial District by order on March 12, 2020, and issued another order on March 16, 2020, closing all court facilities and suspending all court operations. President Judge DelRicci's order of March 16, 2020, declared that the operation of Rule of Criminal Procedure 600 shall be suspended beginning March 12, 2020.
>
> By additional orders issued on March 31, 2020[,] April 1, 2020, and April 28, 2020, the Pennsylvania Supreme Court extended the statewide judicial emergency, suspending Rule 600 in all judicial districts through at least June 1, 2020, and directing the time excluded from the calculation under Rule 600(C).

_____

[2] Covid-19-related court orders are available at: https://www.pacourts.us/ujs-coronavirus-information.

In his April 14, 2020[,] Declaration, President Judge DelRicci included the following language: "Any postponement of criminal case scheduling caused by the declaration of this judicial emergency shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule of Criminal Procedure 600."

On May 27, 2020, the Pennsylvania Supreme Court issued an order ceasing the statewide judicial emergency after June 1, 2020, and allowing the [p]resident [j]udges of the individual judicial districts to continue to exercise their emergency powers until rescinded by each court.

President Judge DelRicci [indefinitely] extended the judicial emergency in the 38th Judicial district by order entered on May 28, 2020. On June 3, 2020, President Judge DelRicci issued an order declaring that any postponement of criminal case scheduling caused by and through the expiration of the judicial emergency shall be considered a court postponement constituting excludable time for purposes of Rule 600.

….

The Pennsylvania Supreme Court issued a final order on June 21, 2021, declaring that operation of the United Judicial System in Pennsylvania return to pre-pandemic status effective July 6, 2021, stating, however, that local judicial emergencies could remain in effect until August 31, 2021.

President Judge DelRicci issued an order on August 30, 2021, declaring that the June 3, 2020[,] order regarding application of Rule 600 was vacated as of August 31, 2021, but that the emergency declaration extending the judicial emergency would remain in effect until further order of the court. The court has not issued a subsequent order and the judicial emergency is still in effect [as of November 17, 2022].[3]

---

[3] By order of court, President Judge Carolyn Carluccio vacated the last order extending Montgomery County's declaration of a judicial emergency, and noted the "[j]udicial [e]mergency has now ended[,]" effective May 11, 2023. *See* Order, 5/10/23, available at https://www.montgomerycountypa.gov/ArchiveCenter/ViewFile/Item/5753 (last viewed Feb. 9, 2024).

The 38th Judicial District Court of Common Pleas began conducting criminal jury trials in August of 2021, before Judge Carpenter, limited to the most serious homicide cases.

Trial Court Opinion, 7/12/23, at 5-7 (footnote added).

On June 29, 2022, Appellant filed a motion to dismiss his case for violation of Rule 600. He argued, *inter alia*, that President Judge DelRicci exceeded his authority in suspending jury trials during periods in which "jury trials could have been conducted in Montgomery County consistent with prevailing health and safety norms." Motion to Dismiss, 6/29/22, at ¶ 95. According to Appellant, the Commonwealth failed to exercise due diligence in bringing his case to trial. *Id.* ¶ 108. A hearing was scheduled for August 1, 2022, after which the trial court denied Appellant's motion to dismiss. *See*, Order, 11/17/22.

On January 24, 2023, Appellant waived his right to a trial by jury and proceeded to a bench trial. *See* Trial Court Opinion, 7/12/23, at 10. The trial court convicted Appellant of all counts and, on January 24, 2023, sentenced him to an aggregate 10 to 20 years in prison, concurrent with a life sentence imposed in a prior unrelated homicide case. *Id.* at 2. Appellant timely appealed, and both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

I.     Did the [trial] court err in finding, for the purposes of Pa.R.Crim.P. 600, the delay in bringing [Appellant] to trial was attributable to the 38th Judicial District Covid-19

- 5 -

Judicial Emergency without first determining whether the Commonwealth had exercised due diligence in bringing [Appellant's] case to trial?

II. Did the [trial] court err in determining that pursuant to the 38th Judicial District Covid-19 Emergency Orders, the period between June 3, 2020[,] and August 31, 2021[,] was automatically excludable under Pa.R.Crim.P. 600 irrespective of the Commonwealth's due diligence?

III. Did the [trial] court err in denying [Appellant's] Pa.R.Crim.P. 600 Motion where the Commonwealth was not duly diligent in bringing [Appellant's] case to trial in that it intentionally gave priority to other cases post-dating the instant case?

Appellant's Brief at 3.

"In general, a trial court's denial of a Rule 600 motion is reviewed for an abuse of discretion; however, it is subject to plenary review when the dispositive question implicates legal issues." *Commonwealth v. Lear*, 290 A.3d 709, 718 (Pa. Super. 2023) (citing *Commonwealth v. Harth*, 252 A.3d 600, 614 n.3 (Pa. 2021)). "The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party." *Commonwealth v. Brown*, 281 A.3d 320, 325 (Pa. Super. 2022) (citation omitted).

Pertinently,

*Harth* and [*Commonwealth v.*] *Carl*[, 276 A.3d 743 (Pa. Super. 2022)] frame the inquiry for the effect of emergency orders on Rule 600. If an order unambiguously suspends Rule 600 without qualification, then the period of the suspension is added to the run date without considering the Commonwealth's diligence. [*See*] *Carl*, 276 A.3d at 751. Alternatively, if an order characterizes a delay as a court postponement, **then that period**

- 6 -

> **is only excluded if the trial court determines after a hearing that the Commonwealth exercised due diligence through the life of the case.**

*Commonwealth v. Malone*, 294 A.3d 1247, 1249 (Pa. Super. 2023) (emphasis added) (quoting *Lear*, 290 A.3d at 719).

As this Court previously determined, the Montgomery County emergency orders characterized case delays as court postponements; thus, a due diligence analysis is required:

> [T]he plain language of the orders reflects that Montgomery County did not continue its unqualified suspension of Rule 600 beyond May 31, 2020. On May 5, 2020, Montgomery County ordered that its previous orders would be rescinded effective May 31, 2020. There were no later orders suspending Rule 600. Instead, Montgomery County opted to order[,] on June 3, 2020, that any emergency-related delay "shall be considered a court postponement and shall constitute excludable time" under Rule 600(C).
>
> As in *Carl*, the plain meaning of the "court postponement" provision was to establish a framework for applying Rule 600 to any postponement caused by the local judicial emergency. *Carl*, 276 A.3d at 750. Unlike in *Carl*, however, the Montgomery County orders did not separately provide that Rule 600 would be suspended after May 31, 2020.
>
> Here, the trial court found, in accordance with the plain meaning of the Montgomery County emergency orders, that the delay in bringing Lear's cases to trial was a direct result of the judicial emergency. For such judicial delay to be excluded from the Rule 600(C) computation, the trial court must find that the Commonwealth exercised due diligence. *Harth*, 252 A.3d at 618.

- 7 -

*Lear*, 290 A.3d at 720.[4]

In reviewing Appellant's claim, we are cognizant of the following:

By the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth[,] **when the Commonwealth has failed to exercise due diligence**[,] shall be included in the computation of the time within which trial must commence." *Id.* 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." *Id.* When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant. **Absent a demonstration of due diligence, establishing that the Commonwealth has done "everything reasonable within its power to guarantee that [the] trial begins on time,"** *Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 17 (Pa. 1998), the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

---

[4] On October 3, 2023, our Supreme Court granted allowance of appeal limited to the following issue:

Whether a court must assess the Commonwealth's due diligence during a worldwide pandemic for purposes of Rule 600 before it excludes delay attributable to a local judicial emergency during which the president judge cancelled and suspended all trials, suspended Rule 600 and otherwise excluded judicial delay caused by the judicial emergency, and implemented strict procedures to protect the public?

*Commonwealth v. Lear*, 305 A.3d 541 (Pa. 2023) (*per curiam*).

***Commonwealth v. Barbour***, 189 A.3d 944, 947 (Pa. 2018) (emphasis added).

Mindful of our scope of review, we must preliminarily determine whether Appellant has waived his issues on appeal for failing to supply this Court with an adequate record. The record reflects that Appellant requested "the transcript of all proceedings held in this matter[.]" Request for Transcripts, 2/17/23 (emphasis omitted).[5] However, the certified record does not contain a transcript of the August 1, 2022, Rule 600 hearing. Indeed, our review discloses that no transcripts were lodged of record in the instant case. In view of this deficit, the Commonwealth asks this Court to deem Appellant's issues waived, noting "[t]his Court's review of the Rule 600 claim depends, in part, on [the Rule 600 hearing] transcript." Commonwealth's Brief at 11. We agree.

Our decisional law underscores an appellant's responsibility to ensure the record is complete for our review. Where there is no indication in the record that a relevant document was inadvertently omitted, "it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts[.]"

_____

[5] The record does not disclose whether Appellant complied with Montgomery County Rule of Judicial Administration 4009(F)(1), which requires that "[a]ll requests for transcripts shall be set forth on the standardized form available at www.montcopa.org/court."

***Commonwealth v. Preston***, 904 A.2d 1, 7-8 (Pa. Super. 2006) (*en banc*) (citation omitted). However, if there is evidence of the existence of such necessary documents, "we might well make an informal inquiry to see if there was an error in transmitting the certified record to this Court." ***Id.*** at 8.

> We might also formally remand the matter to the trial court to ascertain whether notes of testimony or other documentation can be located and transmitted. [***Commonwealth v. O'Black***, 897 A.2d 1234, 1238 (Pa. Super. 2006).] If a remand is necessary, it is appropriate to direct the trial court to determine why the necessary documentation was omitted from the certified record. [***Commonwealth v.*** ]***Williams***, 715 A.2d [1101, ]1107 [(Pa. 1998)]. An appellant should not be denied appellate review if the failure to transmit the entire record was caused by **an "extraordinary breakdown in the judicial process."** ***Id.*** at 1106. However, if the appellant caused a delay or other problems in transmitting the certified record, then he or she is not entitled to relief and the judgment of the court below should be affirmed. ***Id.*** ***See Commonwealth v. Barge***, 560 Pa. 179, 743 A.2d 429, 429–30 (1999) (holding that if documents are missing from the certified record because of a default by court personnel, an appellant is entitled to have his claims resolved on the merits, but if the absence of the evidence is attributable to the appellant's failure to comply with the relevant procedural rules, the claims will be deemed to have been waived).

***Id.*** (emphasis added).

Here, Appellant requested transcripts and the trial court and Appellant cited to notes of testimony[6] from an August 1, 2022, hearing. Our Prothonotary made an informal inquiry with the trial court to ascertain the

---

[6] The scant references to the record of the August 1, 2022, hearing do not supply this Court with sufficient information to undertake a merits analysis as to whether the Commonwealth acted with due diligence in bringing Appellant's case to trial.

whereabouts of the transcript. The trial court located only the January 24, 2023, nonjury trial transcript. Thus, the certified record includes no transcript from the Rule 600 hearing.

Appellant acknowledges our scope of review "is limited to the findings of the trial court **and the evidence on the record of the Rule 600 hearing**[.]" Appellant's Brief at 4 (emphasis added) (quoting **Commonwealth v. Meadius**, 870 A.2d 802, 805 (Pa. 2005)). "Whether a default with regard to the contents of the certified record warrants a finding of waiver is a question that must be evaluated under the particular facts and circumstances of a specific appeal." **Commonwealth v. Bongiorno**, 905 A.2d 998, 1001 (Pa. Super. 2006) (*en banc*).

Our appellate rules provide a remedy for missing transcripts:

[I]f a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

Pa.R.A.P. 1923.

Here, Appellant did not avail himself of the remedy provided by Rule 1923. Although the Commonwealth confirmed the absence of the necessary transcript, Appellant filed no reply brief addressing this matter. **See O'Black**, 897 A.2d at 1238 (deeming issues waived where a transcript was not docketed

- 11 -

and the defendant "did not file a reply brief or take any steps to ascertain if the transcript could be included in the record").

Our review is hampered by the absence of the Rule 600 hearing transcript. Appellant was aware of the significance of this transcript, but took no action to ensure it was transmitted with the certified record or avail himself of the remedy provided by Rule 1923. Accordingly, we deem his issues waived.[7] *See Commonwealth v. Harlan*, 208 A.3d 497, 501 (Pa. Super. 2019) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." (quoting *Preston*, 904 A.2d at 7)); *see also Commonwealth v. McCready*, 295 A.3d 292, 296 n.6 (Pa. Super. 2023) ("When notes of testimony are cited by the parties, we have reason to believe that these records exist. However, the **responsibility rests on the appellant to ensure that the record certified on appeal is complete.**" (internal citations and quotation marks omitted; emphasis added)).

Judgment of sentence affirmed.

---

[7] We note that Appellant is not precluded from addressing appellate counsel's failure to supply an adequate record in a timely Post Conviction Relief Act Petition, 42 Pa.C.S.A. §§ 9541-9546.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/14/2024