J-S11027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON LOUIS COLLINS | : | |
| | : | |
| Appellant | : | No. 1126 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered September 4, 2025
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001088-2023

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.: **FILED: June 9, 2026**

Appellant, Aaron Louis Collins, appeals *pro se* from the aggregate judgment of sentence of 25 to 50 years' incarceration, imposed after he was convicted by a jury of involuntary deviate sexual intercourse by forcible compulsion ("IDSI - forcible compulsion"), 18 Pa.C.S. § 3123(a)(1); corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii); and indecent assault, 18 Pa.C.S. § 3126(a)(1).[1] We affirm.

---

[1] Appellant was granted permission to proceed *pro se* on August 1, 2024. **See** Order, 8/1/24, at unnumbered 1 ("[A]fter an extended **Grazier** Hearing, the [c]ourt finds [Appellant] is making a knowing, intelligent, [and] voluntary waiver of his right to counsel and [Appellant] is permitted to represent himself."). **See also Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998) (holding that "[w]hen a waiver of the right to counsel is sought…, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one"). At Appellant's jury trial on May 5, 2025, "Appellant proceeded *pro se* and James Natale, Esquire, was appointed as
*(Footnote Continued Next Page)*

The facts of Appellant's case are not relevant to our review of the issues he raises on appeal. We only note Appellant was convicted by a jury of the above-stated offenses based on evidence that he performed oral sex on D.S., a 16-year-old boy. D.S.'s mother caught Appellant committing this act and immediately took D.S. to the hospital, "where they performed a DNA test for saliva" that later showed Appellant "was the contributor" of DNA found on D.S.'s genitals. TCO at 4-5.

Following Appellant's jury trial and conviction, he was sentenced on September 4, 2025, to a mandatory term of 25 to 50 years' incarceration for his conviction of IDSI - forcible compulsion.[2] He received no further penalty for his remaining convictions. Appellant filed a timely, *pro se* notice of appeal, and he and the court complied with Pa.R.A.P. 1925. Herein, Appellant states

---

Standby Counsel." Trial Court Opinion ("TCO"), 12/16/25, at 1. Prior to his sentencing, Appellant filed a motion to remove Attorney Natale as standby counsel and, at the start of his sentencing hearing, reaffirmed he did not want standby counsel. *See* N.T. Sentencing, 9/4/25, at 4. Accordingly, Appellant represented himself at sentencing without standby counsel, and remains *pro se* on appeal.

[2] Because Appellant had been previously convicted of IDSI in 1997, he was subject to a mandatory-minimum sentence of 25 years' incarceration under 42 Pa.C.S. § 9718.2(a)(1) ("Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 total years of confinement, notwithstanding any other provision of this title or other statute to the contrary."). *See* N.T. Sentencing at 18.

14 issues for our review, which we reproduce verbatim (aside from removing

unnecessary capitalization):

1. Whether during a disputed period 10/31/22 till 10/31/23, that the Commonwealth was not ready for trial.

2. Whether adopting the Commonwealth position that the prosecution had leeway to proceed, without any diligence, to cause up to 365 days of delays was contrary to the letter and spirit of Rule 600.

3. Whether the court can use pro-se motions that was placed into Appellants record in 2022, but nevered filed, as due dilligence to violate Appellant's Sixth Amendment rights (Rule 600(A)(2)(a)).

4. Whether the court can use pro-se motions a the time where the Appellant had counsel.

5. Whether the Commonwealth demonstrated that it complied with the due diligence requirement of Rule 600 at all relevant periods throughout the life of the case.

6. Whether the courts violated Appellant's due process rights when Appellant was forced to be pro-se at the time of Appellant's mothers passing and the day of her viewing, after telling said court that he was not in the right state of mind to deal with what was going on.

7. Whether said court violated Appellant constitutional rights, when Appellant was told in open court, that said court "will find a way" to deni Appellant motion to dismiss violation of Rule 600(A)(2)(a).

8. Whether the courts violated the right to effective assistance when it interferes in certain ways and ability of appointed counsel to make independent decisions about how to conduct adequate legal assistance.

9. Whether appointed counsel deprived Appellant of his rights to effective assistance simply by failing to render adequate legal assistance before Appellant became *pro-se*.

10. Whether the court violated Appellant's Sixth Amendment (rights Rule 600(A)(2)(a)) when it placed Appellant's run date

to fall in the middle of there criminal court week because Appellant's run date ended before they could bring the case to trial.

11.    Whether Appellant's due process rights to a fair trial where violated when Officer Mickens was aloud to take the stand after sitting through the Commonwealths witnesses testimony.

12.    Whether Appellants due process rights to a fair trial where violated when Officer Mickens stated on the stand that the Appellant was on the Megan's Law registy.

13.    Whether the Commonwealth witnesses (D.S.) was coercion, threaten and or intimidated to testify after trying to drop all charges and stating he was not going to get on the stand and testify.

14.    Whether Appellant charges should have been dropped when the Commonwealths witness (D.S.) refused to testify at two preliminary hearings with all partys at said hearings yet the Commonwealth was granted and continuance each time.

Appellant's Brief at 3-5.

## **Issues 1-5, 7, & 10: Rule 600**

Appellant's issues 1 through 5, 7, and 10 challenge the court's decision to deny his motion to dismiss the charges under Pa.R.Crim.P. 600.  We will address these issues together, applying the following legal principles:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion.  Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.  The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.  An appellate court must view the facts in the light most favorable to the prevailing party.

- 4 -

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters … courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Faison*, 297 A.3d 810, 821 (Pa. Super. 2023) [(cleaned up)].

Generally, under Rule 600, the Commonwealth must bring a defendant to trial within 365 days of filing the criminal complaint. *See* Pa.R.Crim.P. 600(A)(2)(a).

In a Rule 600 analysis, the "mechanical run date" is 365 days after the complaint was filed. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed.

*Commonwealth v. Malone*, 294 A.3d 1247, 1249 (Pa. Super. 2023) (citations omitted). In determining the adjusted run date, Rule 600 further explains:

[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.

- 5 -

> Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1); ***see also*** Pa.R.Crim.P. 600, cmt. ("If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded.") (citations omitted).

Importantly, we note that, in 2012, the Pennsylvania Legislature enacted the new Rule 600, as outlined above, effective as of July 1, 2013. The general dictates of the new Rule 600 remained the same as they were prior to adoption, but the prior distinctions between excludable time and excusable delay were abandoned for a streamlined review of the Commonwealth's due diligence, with a failure to exercise due diligence being considered "includable time." ***Commonwealth v. Wiggins***, 248 A.3d 1285, 1289 (Pa. Super. 2021) (citation omitted).

Our Supreme Court recently explained that the first sentence of Rule 600(C)(1) provides "the general rule" and establishes "two requirements that must be met for delay to count toward the 365-day deadline: (1) the Commonwealth caused the delay and (2) the Commonwealth failed to exercise due diligence." ***Commonwealth v. Lear***, 325 A.3d 552, 560 (Pa. 2024) (citations and internal quotation marks omitted). The ***Lear*** Court clarified that "the causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation." ***Id.*** at 560 n.7.

"Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted). Due diligence must be demonstrated by a preponderance of the evidence. ***See Wiggins***, 248 A.3d at 1289. Rule 600 "expressly calls upon a trial court to assess the Commonwealth's due diligence throughout the life of a case, when faced with a claim that the Commonwealth violated a defendant's speedy trial rights." ***Commonwealth v. Harth***, 252 A.3d 600, 617 (Pa. 2021).

Addressing the second sentence of Rule 600(C)(1), the ***Lear*** Court explained that "'any other periods of delay'—meaning any periods of delay not caused by the Commonwealth or not resulting from the Commonwealth's lack of due diligence—are 'excludable' and

are removed from the computation of the Rule 600 deadline." ***Lear***, 325 A.3d at 560 (brackets and citation omitted).

***Commonwealth v. Holly***, No. 1776 EDA 2024, unpublished memorandum at 5-8 (Pa. Super. filed Mar. 6, 2026).[3]

Here, the following facts are pertinent to our Rule 600 analysis. The charges against Appellant were filed on October 31, 2022, making the mechanical run date October 31, 2023. As the trial court pointed out,

> [a] warrant was issued for Appellant's arrest, and he was arrested on November 9, 2022, which resulted in nine (9) days of excludable time attributable to … Appellant. On December 12, 2022, … Appellant's bail was posted. The preliminary hearing was held on Jun[e] 12, 2023, after being continued four (4) times by the Commonwealth. This time period would be includable time as it was the result of continuances requested by the Commonwealth, and no evidence was presented to demonstrate due diligence for this period.

TCO at 8.

Counsel was appointed to represent Appellant on November 18, 2022. Despite being represented by counsel, Appellant filed several *pro se* pretrial motions in November and December of 2022, including a motion seeking suppression of evidence obtained from his cell phone. **See** *Pro Se* Motion, 12/1/22, at 1 (single page). The record indicates this motion, as well as Appellant's other *pro se* filings, were docketed and then forwarded to his counsel. Appellant's counsel also filed a pretrial motion for discovery on August 3, 2023. As the trial court explained:

---

[3] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

On October 4, 2023, the court issued an order scheduling [an] omnibus pretrial motion [hearing] for December 14, 2023. On December 13, 2023, a continuance was granted at the request of … Appellant[,] with the new hearing date scheduled for February 14, 2024. On February 9, 2024, the hearing was continued at the request of the defense until March 13, 2024. Then on March 12, 2024, the omnibus pretrial hearing was again continued by the defense and rescheduled for July 30, 2024.[4] These continuances resulted in three hundred and two (302) days of excludable time.

On July 20, 2024, … Appellant requested a continuance of the trial due to the death of his mother. The case was continued until the September term of criminal court[,] which ended on September 13, 2024[,] for an additional fifty-five (55) excludable days.

On August 12, 2024, … Appellant filed a Rule 600 Motion. On September 6, 2024, the court held a hearing on … Appellant's Rule 600 Motion on this case and a second case that … Appellant had pending. … Appellant asserted that he had case law which would result in the court['s] ruling in his favor. The court agreed to delay ruling in the case to give … Appellant the opportunity to present his documentation to the court. However, no additional case law or other authority has ever been provided to the court by … Appellant.

_____

4 As mentioned *supra*, Appellant was granted permission to proceed *pro se* via an order filed on August 1, 2024. **See** Footnote 1, **supra**. The record indicates that order was entered following a hearing on July 30, 2024, at which the court conducted a colloquy on Appellant's waiver of his right to counsel, found his waiver to be knowing, intelligent, and voluntary, and then addressed Appellant's *pro se* motion to suppress evidence taken from his cell phone. **See** Order, 8/1/24, at unnumbered 1. After the hearing, the court issued two orders, one granting Appellant's request to proceed *pro se*, **see** Order, 8/1/24, at unnumbered 1, and a second denying Appellant's *pro se* motion to suppress based on the Commonwealth's stipulation "that the cell phone has not been searched and the Commonwealth does not, at this time, intend to offer any evidence taken from [Appellant's] cell phone…." Order, 8/1/24, at unnumbered 1. There are no transcripts of the July 30, 2024 hearing in the certified record. It is the appellant's responsibility to secure the transcripts and ensure they are included in the certified record for this Court's review. **See Commonwealth v. Lesko**, 15 A.3d 345, 410 (Pa. 2011). Given the omission of the July 30, 2024 transcript, we will accept the court's characterization of what occurred at that proceeding, especially given that Appellant does not refute or challenge it.

TCO at 8-9 (unnecessary capitalization omitted). On April 1, 2025, the court issued an opinion and order denying Appellant's motion to dismiss under Rule 600.

Based on the court's discussion and the record, we discern no abuse of discretion in the court's denying Appellant's Rule 600 motion. Initially, we note that by our calculations, the delay attributable to the litigation of Appellant's omnibus pretrial motion — *i.e.*, October 4, 2023, through July 30, 2024 — totaled 300 days (rather than 302 days, as stated by the court). Adding the nine-day delay in arresting Appellant, and the 55-day delay caused by his request to continue the trial, the total delay attributable to Appellant is 364 days. Thus, the adjusted run date was October 27, 2024. Appellant's Rule 600 motion was filed on August 12, 2024, before the adjusted run date had passed. Accordingly, the court did not err in denying Appellant's motion to dismiss.

Appellant's arguments on appeal do not convince us otherwise. Notably, Appellant's Rule 600 issues are confusing at best and, at times, completely undeveloped. From what we can discern, Appellant initially suggests the Commonwealth did not exercise due diligence in bringing him to trial during the time-period between the filing of the charges on October 31, 2022, and the expiration of the mechanical run date on October 31, 2023. *See* Appellant's Brief at 9. However, Appellant does not account for the delays caused by the defense that adjusted the run date to October 27, 2024. Because Appellant's Rule 600 motion was filed **before** that adjusted run date

passed, the Commonwealth was not required to demonstrate it exercised due diligence during the time-period raised by Appellant.

Additionally, Appellant seems to contend the court erroneously excluded, from the Rule 600 calculations, the delay caused by litigating his *pro se* motion to suppress. Appellant stresses he was still represented by counsel when he filed this *pro se* motion; thus, he argues the court's considering it effectively permitted hybrid representation. *Id.* at 12. *See also Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016) ("In this Commonwealth, hybrid representation is not permitted. Accordingly, … *pro se* motions have no legal effect and, therefore, are legal nullities.") (citing *Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011)). We disagree. Appellant waived his right to counsel at the July 30, 2024 hearing *before* the court considered his *pro se* motion to suppress and issued the order denying it on August 1, 2024. Accordingly, we discern no abuse of discretion in the court's excluding, for Rule 600 purposes, the delay caused by litigating Appellant's *pro se* motion to suppress.

Next, Appellant argues "the Commonwealth did not demonstrate or provide any evidence that it acted with due diligence throughout the proceedings" as required by *Harth*. Appellant's Brief at 13. Again, because the adjusted run-date had not passed when Appellant filed his motion to dismiss, the Commonwealth was not required to prove it had acted with due diligence up to that point.

Appellant also maintains his constitutional rights were violated when the court purportedly stated it "will find a way" to deny his motion to dismiss under Rule 600. *Id.* at 17. Appellant does not cite to where in the record the court allegedly made this remark, or explain — with citation to pertinent legal authority — how it demonstrates an abuse of discretion by the court. We will not scour the record or develop Appellant's argument for him. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument…."); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (stating we "will not act as counsel and will not develop arguments on behalf of an appellant"). Thus, we deem this claim waived. *See Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (observing when "defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived") (citations omitted).

Appellant next contends the court violated his constitutional right to a speedy trial when it continued the pretrial conference to October 30, 2023, "one day shy of Appellant's" mechanical run date. Appellant's Brief at 21. Appellant also claims the court erred by ordering his "run time to start on [April 1, 2025,] yet [the court did] not have trial [until] 30 days later." *Id.* These arguments are again confusing, at best, and too underdeveloped to permit our meaningful review. Appellant does not discuss how the court erred

in these scheduling decisions or cite any law to support his claims. Thus, they are waived for our review. **See Kane**, **supra**.

Finally, Appellant argues, in a single sentence, that the court abused its discretion by not conducting a hearing on his Rule 600 motion to dismiss. Appellant's Brief at 21 ("Appellant was never give [*sic*] a hearing for his []Rule 600 motion[.]"). As set forth *supra*, the court stated in its Rule 1925(a) opinion that a hearing was held on Appellant's motion on September 6, 2024. **See** TCO at 9. The court also declared a hearing was conducted on Appellant's Rule 600 motion in its opinion and order denying it. **See** Trial Court Opinion and Order, 4/1/25, at 2. Additionally, the Commonwealth claims a hearing was conducted on the motion. **See** Commonwealth's Brief at 9 ("On September 6, 2024, the trial court heard the Rule 600 motion, and permitted Appellant [the] time he requested to provide the trial court with case law in support of his position.") (unnecessary capitalization omitted). Although the docket does not contain an entry for the September 6, 2024 hearing (and no transcript of this proceeding is included in the certified record), we have no cause to doubt the trial court's and Commonwealth's assertions that a hearing was conducted on Appellant's Rule 600 motion. His single-sentence claim to the contrary warrants no relief.

In sum, Appellant's Rule 600 issues are either meritless or waived for lack of development. Thus, no relief is due on issues 1 through 5, 7, or 10.

**Issue 6: Waiver of Counsel**

In Appellant's sixth issue, he asserts "the court forced him to become *pro*[]*se* to try to hide the violations throughout the case[.]" Appellant's Brief at 16. Appellant also alleges "he was not in the right state of mind" to decide to waive his right to counsel, and "was not mentally competent … to conduct his own defense[,]" as his mother had just died. ***Id.*** Notably, Appellant does not explain how or why he was incapable of validly waiving his right to counsel, or offer any citations to the record to support this argument. Not only is Appellant's five-sentence argument insufficiently developed, but we also reiterate the transcripts of the July 30, 2024 hearing, at which Appellant waived his right to counsel, are not included in the certified record. Due to Appellant's failure to secure these transcripts for our review, or meaningfully develop his arguments, we deem this issue waived. ***See Lesko***, ***supra***; ***Kane***, ***supra***.

### Issue 8: Interference with Counsel

In Appellant's eighth issue, he argues "the court interfered with Appellant['s] appointed counsel['s] motion to dismiss for [a] violation of []Rule 600(A)(2)(a)…." Appellant's Brief at 18. This claim is confusing, as there is no indication in the record that Appellant's attorney filed a Rule 600 motion to dismiss. Appellant also does not explain how the court interfered with counsel's ability to do so. Thus, no relief is due.[5]

---

[5] Within this issue, Appellant also seems to reiterate his claim the court improperly permitted hybrid representation by considering his *pro se* motion
*(Footnote Continued Next Page)*

- 13 -

### **Issue 9: Ineffective Assistance of Counsel**

Next, Appellant maintains his counsel deprived him "of his right[] to effective assistance simply by failing to render adequate legal assistance…." *Id.* at 19-20.  In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed its prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  **Holmes**, 79 A.3d at 576.  The specific circumstances under which ineffectiveness claims may be addressed on direct appeal are not present in the instant case.  **See id.** at 577-78 (holding the trial court may address claim(s) of ineffectiveness where they are "both meritorious and apparent from the record so that immediate consideration and relief is warranted," or where the appellant's request for review of "prolix" ineffectiveness claims is "accompanied by a knowing, voluntary, and express waiver of PCRA review").  Thus, Appellant's attempt to raise an ineffectiveness claim in the instant appeal is improper, and he must wait until collateral review to assert this issue.

### **Issue 11: Sequestration of Witnesses**

In Appellant's eleventh issue, he contends his due process rights were violated "when the court did not honor his request for all of [the]

---

to suppress.  **See** Appellant's Brief at 18.  This argument is meritless for the reasons set forth, *supra*.

Commonwealth['s] witnesses [to] be sequestered," thus allowing the investigating police officer to hear the testimony of other witnesses before he then testified. Appellant's Brief at 22. Appellant provides just two sentences in support of this issue, and does not cite or discuss any legal authority. *See id.* This undeveloped argument is waived. *Kane*, *supra*.

### Issues 12 & 13: Megan's Law & Witness Coercion

Likewise, Appellant has waived his twelfth and thirteenth issues. Therein, Appellant contends his "right to a fair trial was violated when [the investigating o]fficer … [said] to the jury that … Appellant was on the Megan's Law registry." Appellant's Brief at 22. Appellant also maintains an unnamed "Commonwealth witness was coerc[ed], threaten[ed] and[/]or intimidated to testify by the prosecutor['s] and … court['s] telling said witness if he did not testify he will be held in cotent [*sic*] of court and will be placed into the county jail after said witness stated he was not testifying." *Id.* at 23. Appellant provides just two sentences to support each of these claims, without any citation to, or discussion of, pertinent legal authority. Additionally, Appellant does not name the witness allegedly coerced. Even if we presumed, from Appellant's Statement of the Issues, he is alleging the victim was coerced into testifying, Appellant does not point to where in the record the Commonwealth and/or trial court threatened him with incarceration. Again, we will not scour the record or develop Appellant's argument for him. Thus, these issues are waived. *Kane*, *supra*.

### Issue 14: Preliminary Hearing Continuance

Lastly, Appellant contends his due process rights were violated when the magisterial district court granted the Commonwealth's motion for a continuance of the preliminary hearing because the victim was unwilling or unable to testify. *See* Appellant's Brief at 23. Appellant's two-sentence argument, unsupported by any legal authority, is waived. *Kane*, *supra*. In any event, we note "[o]ur Supreme Court has held that once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Edwards*, 177 A.3d 963, 970 (Pa. Super. 2018) (cleaned up). Accordingly, even if not waived, we would conclude no relief is due on Appellant's final issue.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/9/2026